699 P.2d 921

**FUND MANAGER, PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM, Plaintiff/Appellant,**

**v.**

**PIMA COUNTY SHERIFF PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM BOARD; Leatrice Minor, Real Party in Interest, Defendants/Appellees.**

**No. 2 CA–CIV 5203.**

Court of Appeals of Arizona, Division 2.

Feb. 19, 1985.

---

Snell & Wilmer by Michael P. Anthony and Tibor Nagy, Jr., Phoenix, for plaintiff/appellant.

Law Office of Richard J. Michela by William L. George, Tucson, for defendant/appellee Pima County Sheriff Public Safety Personnel Retirement System Bd.

Rubin Salter, Jr., Tucson, for defendant/appellee Minor.

## OPINION

HOWARD, Judge.

Was a deputy sheriff employed exclusively as a cook at the county jail entitled

to a retirement pension under the Public Safety Personnel Retirement System? We hold that she was not and reverse.

Leatrice Minor worked for the Pima County Sheriff's Department between September 1967 and September 1980. During the 13 years in which she was employed she worked exclusively as a cook whose duties included the supervision of kitchen help at the county jail.

At the time she was hired, Minor as well as all other employees of the department, including clerks and secretaries, were sworn in by the sheriff as deputy sheriffs. She never carried a weapon, never went out on a patrol, never made an arrest, and never conducted a criminal investigation for the Pima County Sheriff's Office. She never received any official law enforcement training.

The practice of deputizing all employees in the department ceased in 1971 when the new acting sheriff reclassified various non-hazardous duty department employees, including cooks. The sheriff unilaterally removed these employees' deputy commissions and the employees affected by this change, including Minor, filed a petition with the Pima County Law Enforcement Merit System Council challenging their unilateral classification and alleging that the practice was in contravention of the Law Enforcement Merit System statute, A.R.S. § 38-1001 et seq. The matter was ultimately resolved by us in 1978 in the case of *Klein v. Pima County Law Enforcement Merit System Council*, 119 Ariz. 69, 579 P.2d 573 (App.1978). In *Klein* we held that the plaintiffs were still deputy sheriffs since their reclassification by the acting sheriff was of no avail because he lacked the power to reclassify, such power resting solely in the Pima County Law Enforcement Merit System Council. By mandate of the *Klein* decision, the reclassified employees, including Minor, were reinstated to their former positions as deputy sheriffs and were ultimately awarded a uniform pay rate with other deputy sheriffs as well as back pay. See *Pima County v. Pima County Law Enforcement Merit System Council*, 128 Ariz. 62, 623 P.2d 851 (App. 1980).

On April 1, 1981, Leatrice Minor filled out a Public Safety Personnel Retirement System application form and subsequently submitted an application for a disability pension, which was accepted by the secretary for the board. Also, Minor completed a form electing benefits under the system. In July 1981, the board ruled that Minor was a member of the system. On October 16, 1981, Minor was medically diagnosed as permanently disabled and on November 5, 1981, the board voted to award Minor ordinary disability retirement benefits under the system, effective November 19, 1980.

When the fund manager discovered that the board had certified Minor as qualified for a disability pension under the system he filed a petition with the board challenging the board's finding of her eligibility. The board affirmed its earlier decision to accept Minor as a member of the system and the fund manager filed this action in the Pima County Superior Court pursuant to A.R.S. § 38-847(G).

The fund manager thereafter filed a motion for summary judgment alleging that the act precludes, as a matter of law, membership within the system of persons who are not regularly assigned to hazardous duty. In response, defendants/appellees argued that Minor was indeed assigned to hazardous duty or, in the alternative, that as a matter of law, Minor was an "employee" within the meaning of former A.R.S. § 38-842(11), thereby rendering her eligible for membership.

The trial court found that although authorized to do so, Minor did not perform the usual duties of a deputy sheriff such as investigation, patrol, and arrest and concluded that Minor's duties were not hazardous duty in the classical sense. However, the trial court denied the fund manager's motion for summary judgment and granted appellees' cross-motion for summary judgment. The trial judge also awarded appellees their costs and attorney's fees pursuant to A.R.S. § 12-341.01.

The resolution of Minor's eligibility lies in the statutes establishing the public safety personnel system. The purposes for establishing the system are found in A.R.S. § 38–841. One of these purposes appears in § 38–841(B):

"In order to provide a uniform, consistent and equitable statewide program for public safety personnel *who are regularly assigned hazardous duty* in the employ of the state of Arizona or a political subdivision thereof, this retirement system was created effective as of July 1, 1968, as an amendment to and continuation of three prior systems...." (Emphasis added)

Because eligibility under the system depends upon whether one is a "member" (see A.R.S. § 38–844), A.R.S. § 38–842(11) and (15) as they existed prior to the amendment of the statute in 1983 are of prime importance.

Section 38–842(12) defined employee as: "... Any person who is *a member of a group* of public safety personnel regularly assigned to hazardous duty, including groups of policemen, municipal firemen, state highway patrolmen, county sheriffs and deputies, fish and game wardens, penitentiary guards, college campus policemen and special agents, and excluding persons compensated on a contractual or fee basis." (Emphasis added)

A.R.S. § 38–842(16) defined the word "member" as follows:

"... Any employee excluding persons in stenographic or clerical positions:

a. who is either a full-time paid municipal policeman, fireman, or law enforcement officer employed by the state...."

In 1983, after the institution of this lawsuit, the legislature changed the definition of the word "member". Now, A.R.S. § 38–842(18) defines member as:

"... any employee who meets all of the following qualifications:

(a) Who is either a full-time paid municipal policeman, fireman, or a law enforcement officer employed by the state ... *and who is or was regularly as-*

*signed to hazardous duty."* (Emphasis added)

The phrase "regularly assigned to hazardous duty" is now defined in the 1983 amendment in § 38–842(22) as follows:

" 'Regularly assigned to hazardous duty' means regularly assigned to duties of the type normally expected of municipal police officers, municipal firefighters, state highway patrol officers, county sheriffs and deputies, fish and game wardens, penitentiary guards and college campus police officers. Those individuals who are assigned solely to support duties such as secretaries, stenographers, clerical personnel, clerks, *cooks*, maintenance personnel, mechanics and dispatchers *are not assigned to hazardous duty regardless of their position classification title....*" (Emphasis added)

Appellant contends that the 1983 amendments clarified the existing statute and demonstrate that the legislature never intended that cooks such as appellee would be members of the Public Safety Personnel Retirement System.

▆▆▆ Resolution of this issue leads us to the principles of statutory construction. A discussion of those principles in a situation such as we have here can be found in the recent supreme court case of *State v. Sweet*, 143 Ariz. 266, 693 P.2d 921 (1985). An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act. However, before we can apply this theory, we must determine whether the statutes, as written prior to the 1983 amendments, were ambiguous. An ambiguity in a statute is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined and may also be found to exist where there is uncertainty as to the meaning of the terms of a statute. *State v. Sweet, supra.* If there is an ambiguity, we may consider the prior and subsequent statutes in *pari*

*materia* in order to ascertain the intent of the legislature. Furthermore, it is proper to turn to the overall purposes and aim of the legislature in enacting the statute in order to glean the legislative intent.

 With these rules in mind, the threshold question is whether the original statute is ambiguous. We find that it is. A.R.S. § 38–841(B) makes it clear that the purpose of the system is to provide a program for personnel regularly assigned hazardous duty. A.R.S. § 38–842(16) excludes stenographers and clerks from the system because they are not regularly assigned to hazardous duty, yet the same statute apparently would allow cooks and bottle washers into the system even though they are not regularly assigned to hazardous duty and in direct contradiction to one of the purposes of the statute. A.R.S. § 38–842(12) also conflicts with A.R.S. § 38–841(B) if cooks are allowed into the system. A further indication of the legislature's intent that regular assignment to hazardous duty is an eligibility criterion for PSPRS membership is found at A.R.S. § 38–857 (now renumbered § 38–855). That section provided, as it does now after the 1983 amendment, that a person who is transferred to non-qualifying "duties" must be transferred to the retirement system applicable to those performing such duties. This section would be rendered largely meaningless if a person designated a deputy sheriff were eligible for PSPRS membership regardless of the duties to which he or she were assigned. The legislature contemplated that law enforcement personnel would be assigned to law enforcement duties, and it restricted eligibility in the PSPRS to those performing such duties (or qualifying firefighter duties). Full-time cooks do not perform law enforcement duties as contemplated by the legislature.

When the old statute is compared with the amendments it is clear that the legislature was unaware that there were persons deputized such as was appellee. The legislature never intended that persons who were not regularly assigned to hazardous duty were to be part of the system. The trial court erred in granting appellee's cross-motion for summary judgment.

Reversed and remanded with directions to enter judgment in favor of appellant.

BIRDSALL, C.J., and HATHAWAY, J., concur.